UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LISA THOMSON, Administratrix of
the Estate of EDNA LEE                                                              PLAINTIFF

v.                                                              CIVIL ACTION NO. 3:02CV-224-S

WILLIAM J. HENDERSON, POSTMASTER GENERAL                         DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on motion of the defendant, William J. Henderson, Postmaster General (referred to herein as "Postal Service"), for summary judgment in this action alleging sex, race, age, and disability discrimination in the employment of Edna Lee. (DN 33). Lee has filed a cross-motion for summary judgment (DN 38).

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a

light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

In 1985, Edna Lee, an African American woman, was hired by the Postal Service as a Flat Sorter Machine Operator.  In 1987, Lee had non-work-related back problems for which she had surgery in 1988.  In 1991, Lee filed a workers' compensation claim which was accepted by the Department of Labor, Office of Workers Compensation Programs, for an ankle sprain.  Lee filed a claim for another work-related injury suffered on June 19, 1992.  She also filed a claim for an injury she claimed she received on the job on January 10, 1993.  This 1993 claim was finally denied on February 8, 1995 after review of an earlier decision.

In 1992, Lee was given a temporary limited duty assignment casing mail which met her physician's restrictions.  In light of her workers' compensation claims, Lee was required to be provided a temporary limited duty assignment under the terms of the Collective Bargaining Agreement governing her employment.  Lee was kept in this position pending resolution of her 1993 injury claim.  She remained in this position until March 7, 1995.

On March 7, 1995, Lee submitted a request for a temporary light duty assignment, an assignment based upon her non-work-related back problems.  She submitted a Light Duty Evaluation form completed by Dr. Martyn Goldman, her physician, which indicated that she could not bend, stoop, twist, or utilize a rest bar, and could not push, pull, or lift over five pounds.  The evaluation indicated that these limitations were permanent.  Dr. Goldman also completed a USPS Medical Form which stated that Lee's limitations were the result of degenerative disc disease.  Lee Dep., Ex. 3.

On March 16, 1995, Lee submitted a second request for temporary light duty with a revised Light Duty Evaluation.  The evaluation was modified to provide a lifting restriction of 15 pounds. On March 17, 1995, her request was approved.  The duties for which she was approved were "manual distribution in flat operation within restrictions."  Lee depo., Ex. 4.

Lee was counseled by Senior Personnel Specialist Gina Mullins in March and in September of 1995 regarding her options for employment in light of the indication by her physician that her limitations were permanent. Lee did not disagree that she was unable to perform all of the essential functions of the position of Flat Sorter Machine Operator. Lee Depo., pp. 77-78. The results of a Fitness for Duty Examination performed on September 22, 1995 also confirmed that she was medically unfit to perform the essential functions of the job for which she was hired.

Mullins counseled Lee that she might be able to perform the positions of Misaddressed/Unaddressed Mail (MUM) Clerk or CFS Clerk. Lee was told that she would need to pass a typing test for either of these positions, and that she would need to bid for the jobs. There was a lifting requirement for these jobs, however, and no accommodation for her lifting restriction could be considered unless she was the senior qualified bidder for a position. Lee never took the typing test.

Lee was accompanied by two union stewards when she was counseled by Mullins in September of 1995. Mullins indicated that she did not know of any vacancies among the MUM and CFS positions at that time. She also talked with Lee about the possibility of disability retirement.

On January 22, 1996, Lee was notified by letter that she had been removed from the U.S. Postal Service effective February 26, 1996 because she was "medically restricted from safely performing the essential duties of a Flat Sorter Operator." 1-22-96 Letter, p. 1. The letter indicated that her physical restrictions prevented her from performing her job since June 22, 1991. *Id.* It stated that due to the severe nature of the restrictions imposed by Dr. Goldman, the Postal Service could not accommodate her in any entry level position. *Id.* The letter further indicated that she had been counseled concerning other job options for which she might qualify and that she had been provided information concerning disability retirement to which she had not responded. 1-22-96 Letter, p. 2. Lee was fifty-one years old at the time of her discharge.

Lee filed a grievance over her discharge from employment. She alleged that the Postal Service breached the collective bargaining agreement by failing to reasonably accommodate her disability. *See*, Arbitration Decision, pp. 15-17. She was represented by her union at a hearing on October 10, 1996. A decision denying the grievance was rendered on November 18, 1996. The arbitrator determined that the Postal Service had not violated the collective bargaining agreement when it denied her request for permanent light duty and discharged her. Arbitration Decision, p. 1.

Lee filed an EEOC complaint alleging sex, race, age, and disability discrimination. Complaint, p.3, ¶ 7. The sole factual allegation in the complaint is that "[o]n or about September 22, 1995, [Lee] was requested to take a fitness for duty examination and was subsequently terminated." Complaint, p. 3, ¶ 8. She contends that "[c]aucasian males, those under age 40 and/or disabled were treated differently than Plaintiff and were not terminated." *Id.*[1] The complaint contains no factual allegations relating to claims of sex, race, or age discrimination. "Although FED.R.CIV.P. 8 does not require detailed factual pleading, a plaintiff's assertions must still direct the defendant to the factual cause of the plaintiff's alleged injury...The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions...devoid of any well-pleaded facts." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995); *citing, Baxter v. Vigo County School Corp.*, 26 F.3d 728, 736 (7th Cir. 1994).

In response to the summary judgment motion and in support of her own summary judgment motion, Lee offers a fourteen-paragraph counter-statement of facts. These paragraphs contain only the allegations that (1) Despite the fact that she had been working full time, in August, 1995 Lee was required to take a fitness for duty examination; (2) The Postal Service was aware that Lee was

---

[1] The court had not been provided with the EEOC complaint, nor a right to sue letter. The Complaint states that more than 180 days have expired since the filing of the complaint and that she has received a "Final Agency Decision." Complaint, p. 2, ¶4. The court has seen the agency decision from the arbitrator, but not a decision from an EEOC proceeding. As there has been no challenge to the court's jurisdiction, we will accept for purposes of this opinion that Lee exhausted her administrative remedies before filing this action.

disabled, but did not create a permanent light duty job to accommodate her, even though it could make a light duty job out of any job it wanted to; (3) The Postal Service created a job for a co-worker, Pat Sauer, who had a non-work-related condition; and (4) The Postal Service made no attempt to remove Lee from service until she had a altercation with a supervisor, Gordon Jewett. *See*, Response to Motion for Summary Judgment, ¶¶ 7, 8, 11, 12, 13, 14.

The only factual allegations which could arguably relate to the claims of sex, race, or age discrimination are the purported creation of a position for a similarly situated co-worker and the allegation that an altercation with a supervisor put the wheels in motion for her evaluation and subsequent discharge. A reading of the deposition excerpts which are cited by Lee to support these allegations do not reveal a single fact suggesting that her discharge was based upon sex, race, or age discrimination.

Lee describes the altercation with Gordon Jewett in her deposition at pages 94 - 99. She acknowledges that after an unpleasant exchange with him, she felt ill and went to see the nurse. Lee stated that by the time she arrived at the nurse's office, her blood pressure was extremely high. She stated that the nurse was concerned, asked if she had medication to control it, and advised her to take some. Lee stated that she declined, and said that she would just relax with her head down and that she would be alright. The nurse did not release Lee to return to work, but instead sent her home. Lee Depo., pp. 97-98. Lee acknowledged that she did not receive any discipline in the form of a letter of warning, a suspension, or a job discussion as a result of her encounter with Jewett.

At page 73 of her deposition, Lee gave the following answers:

Q: Do you know why you were sent for a fitness for duty examination?

A: No. They didn't explain it to me.

Q: Didn't explain it to you?

A: No. Because I asked Dennis about it, and he said he didn't know, but he would check on it. But he never did tell me why.

However, the September 18, 1995 letter sent to Lee requesting her to report for a fitness for duty examination states:

> The purpose of this examination is to gather additional medical information regarding your back and blood pressure conditions to assist in determining your ability to safely perform the essential functions of your MPFSM clerk position.

Lee Depo., Ex. 6.

The only testimony identified by Lee in her responsive brief to support a connection between Lee's altercation with Jewett and her discharge is her reference to page 99 of her deposition:

> Q: Do you think that incident caused your removal?
>
> A: That's what rocked the boat. See, you always be on a see-saw around here. As long as you don't tip the see-saw – you tip the see-saw, then you're going one way or the other. They are going to retaliate one way or the other.
>
> Q: So, you think that you were removed in retaliation for that incident with Mr. Jewett?
>
> A: I know I was.
>
> Q: Gordon Jewett.
>
> A: Other than that, they didn't have anything to bother me for. I was on time and did my job in conducting what I did.

At the summary judgment stage, it is not the court's function to weigh the evidence, but rather to determine whether a reasonable jury could return a verdict for the nonmoving party, viewing all facts and inferences in the nonmovant's favor. *Anderson,* 477 U.S. at 248. There must be more than "some metaphysical doubt as to the material facts" in question. The nonmovant must provide "concrete evidence supporting its claims and establishing the existence of a genuine issue of material fact." *Cloverdale Equipment Company v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The burden rests with Lee to establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1972); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). The court concludes that there is no genuine issue of material fact concerning Lee's claims of sex, race, or age discrimination, and the Postal Service is entitled to judgment as a matter of law. The only evidence Lee has offered is her deposition testimony that she was discharged for "rocking the boat" with a supervisor. Her contention that the Postal Service retaliated against individuals who "tipped the see-saw" with management contains no implication of any discriminatory purpose and there is therefore no factual basis for a claim of sex, race, or age discrimination which Lee has identified.

Lee alleges that she was treated differently from Pat Sauer, a co-worker who also had physical limitations. The court is unable to glean from the documents or Lee's deposition whether the treatment of this individual is alleged to evidence race or age discrimination. Her race and age have not been stated. In any event, the uncontroverted evidence is that Sauer was not treated differently from Lee with respect to her disability. The evidence establishes that Sauer was provided light duty for a period of time. Her request for permanent light duty was denied. She was required to bid for a MUM Clerk position. She was qualified for, was the successful bidder on, and ultimately was awarded the position. Later, Sauer applied for and was granted disability retirement. Mullins Affidavit, ¶ 6. February 17, 1994 Letter to Sauer ("After careful consideration, a decision has been made to deny your request [for permanent light duty]. If you wish to be considered for a position on Tour 1, you will need to bid and provide medical documentation addressing your ability to perform the essential functions of the job.").

Lee alleges violation of both the Americans with Disabilities Act, 42 U.S.C. ¶ 12112(a) and the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et. seq.* Both the Rehabilitation Act and the Americans with Disabilities Act prohibit discrimination against disabled persons. Courts have held

that the analysis under one "roughly parallels" the other. *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177-78 (6th Cir. 1996). "Because the standards under both the acts are largely the same, cases construing one statute are instructive in construing the other." *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997).

In order to make out a claim for violation of the ADA or the Rehabilitation Act, Lee must show that she was an otherwise qualified individual with a disability, and that the Postal Service failed to provide her a reasonable accommodation for that disability. She bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable. *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247 (6th Cir. 2000), *citing, Monette*, *supra*.

Lee must show that she was a "qualified individual with a disability" by coming forward with evidence that she satisfied the prerequisites for the positions she held or desired, such as possessing the appropriate educational background, employment experience and skills, and that she could perform the essential functions of the position held or desired, with or without reasonable accommodation. *Burns*, 222 F.3d at 256, *citing, Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 676 (7th Cir. 1998). The court established the extent of the obligation to reassign Lee to another position:

> We agree with the Seventh Circuit that an employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his old job even with accommodation to a new position within the Company for which that employee is otherwise qualified...According to the [EEOC] regulations, an employer need only reassign a disabled employee to a vacant position. *See* 29 C.F.R. pt. 1630, App. § 1630.2(o)...Employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual.

*Burns*, 222 F.3d at 257.

There is no dispute that Lee could not perform the essential functions of the position for which she was hired, Flat Sorter Machine Operator, with or without reasonable accommodation. Rather, Lee contends that she could continue in the various jobs to which she had been assigned

while on limited duty for her work-related injury, or while on temporary light duty for which she was later approved. Lee has not come forward with evidence that there was a vacant position which she could fill. She contends that "[t]he postal service can make a light duty job out of any job if they want to," and that "Pat Sauer had a non work related condition and the postal service created a job for her to accommodate her disability." Response, ¶¶ 12, 13. Lee's impression that the Postal Service could "make a light duty job out of any job" does not establish an entitlement to have the work she had been performing converted into a permanent light duty position. Her contention that Pat Sauer had a light duty job created for her is not supported by any evidence in the record. The only evidence of record is that Pat Sauer bid for the MUM Clerk position that she was awarded.

Lee contends that because she performed the same functions when she was on limited duty as she did when she was on temporary light duty, the Postal Service's explanation concerning the two job classifications and their purposes asserts a distinction without a difference. In fact, she urges that a light duty assignment that lasts "an extreme length of time" (Response, p. 7) amounts to a permanent assignment. This *de facto* permanence argument is unsupported by any citation to legal authority. The law does not require that the Postal Service keep her permanently in a temporary position, no matter the length of time which she has served in that position.

Lee was counseled concerning positions for which she could become qualified. She was informed that in order to obtain such a permanent position, she would need to be the senior bidder for it. The Sixth Circuit recognized in *Burns, supra.*, that an employer need not alter a legitimate job bid process to accommodate a disabled employee. Lee did not take the typing test nor otherwise pursue the other job possibilities. Lee was also notified that there were no entry-level positions available with which to accommodate her limitations. Thus the evidence is undisputed that the Postal Service identified the full range of alternative positions which she satisfied, with or without reasonable accommodation, before discharging her from employment. *Burns*, 222 F.3d at 257. The

court concludes that Lee has failed to come forward with evidence sufficient to establish a *prima facie* case of discrimination under the ADA or the Rehabilitation Act.

For the reasons set forth herein, the court concludes that no genuine issue of material fact exists and the Postal Service is entitled to judgment as a matter of law.  The cross-motion for summary judgment by Lee will be denied.  A separate order will be entered this date in accordance with this opinion.